Good afternoon, Your Honors. I'm Kathleen Moran from the Federal Defenders of Eastern Washington and Idaho, appearing on behalf of Lawrence Sims. I ask this Court to consider that this is Mr. Sims' first federal habeas petition and ask that the Court takes great caution in dismissing the petition permanently for a procedural default. I'd like to first address whether or not Mr. Sims was, in fact, procedurally defaulted under the Washington law. There was kind of some interesting procedural history that took place in this case. It started after trial when Mr. Sims' appellate lawyer filed a motion to withdraw an appellate brief pursuant to Anders v. Washington. It's unclear whether Mr. Sims ever got letters indicating to him that he was supposed to file supplemental appellate briefs if that's, in fact, what he wanted to do. And I did supplement the record with letters from the Court of Appeals that suggested that Mr. Sims' appellate counsel had lost track of him while he was in the prison system and wasn't sending his mail to him. Instead, Mr. Sims filed a personal restraint petition, which I think he almost immediately realized was probably not the correct thing to file, because he did make an attempt right away to withdraw that and refile a second personal restraint petition that would have been blank, I think, in hopes of being able to preserve his issues down the road. He made attempts to do that. That ended up not working out because the Court of Appeals for Division III combined both the appellate brief with the Anders brief, in essence, with Mr. Sims' personal restraint petition. In that first personal restraint petition, he hadn't raised the issues that he wanted to raise. And I think he was in a situation where he was in prison, being shuffled around because he was starting his prison sentence and didn't have access to a library and other things, which are in his briefs to the state courts. He then attempted to file a second personal restraint petition in the Court of Appeals, and that was basically not considered by them. It was considered procedurally defaulted because of the first personal restraint petition, despite the fact that he had made attempts to strike that petition. Now, when we get to the Washington Supreme Court, Mr. Sims never appealed that, the first personal restraint petition, and did a motion of discretionary review for that one. What he did instead was after he raised all of his issues in his second personal restraint petition, he attempted to do discretionary review with that petition. I think all those are significant because it's clear that Mr. Sims was making attempts in a pro se capacity to get his issues before the Court in a manner in which they would not be procedurally defaulted. I think that when Mr. Sims did file his Federal habeas petition, the district court realized that perhaps under Russell v. Rolfs that Mr. Sims might have an issue there. However, the Court ended up resolving that issue by deciding that the Washington Supreme Court had reviewed it as a successive petition and that the law had subsequently changed after Russell v. Rolfs. So if you could get by Vander Luke and you could get by the Washington Rule 16.4 and some kind of substantial compliance, because he's definitely in kind of running around in his tail trying to appeal his case, how would you get over the prejudice hurdle? Obviously, he might not have had a rocket scientist for a lawyer, but where is the prejudice that rises to the level we need, that you need to show here? Your Honor, I think the prejudice, do you mean at the appellate level or at the trial court level? At the trial court level. Your Honor, the prejudice has to do with, and this kind of shifts gears into the factual conundrum that took place during the trial. And that starts with the fact that the trial court acquitted Mr. Sims of a charge in which there were other witnesses that testified to the behavior and yet found him guilty of a charge in which there were no other witnesses. And it goes back to the credibility of the victim in the case. And I presented this in the briefs. There was substantial information that was discovered basically, some of it was discovered immediately post-trial via a letter by a woman named Faye Hudson. And that woman alleged that she had been threatened by the victim in the case that if she came forward and testified about false allegations that she would come to some kind of harm. There was also a witness that had been subpoenaed by the defense, a person by the name of Justin Johnston. That person would have testified that he was present during a conversation that took place with the victim about false allegations that she was making. That person did not show up to court, and yet trial counsel didn't make any efforts to either stop the trial or ask for a recess or ask for a material witness warrant, do anything that would have brought that witness to the court. If that witness had been to the court, I think you would have had a situation where the only witness against Mr. Sims was this woman, and there was significant credibility issues with regards to this woman. Certainly, the court did find him not guilty of another count in which there were other witnesses. And in reading the record, you can only come to that conclusion by deciding that the court did not believe her and instead believed Mr. Sims' alibi. So I think that if there had been additional information, which apparently was available at the time of the trial, at least some of it was available at the time of the trial, if trial counsel had made a motion to ask the court to hold on the trial or look for the witness or a material witness warrant, I think those things all may have made a difference because then the court would have had a little bit extra to determine the credibility. Nothing to do with this case, however. What is the policy of your office regarding bringing habeas corpus cases most of the time and involving state court judgments? Your Honor, we don't take habeas petitions unless they're appointed by the court. So in this case- You don't make a decision that you're appointed by the court all the time. No, Your Honor. What happened in this particular case is I believe that this court appointed counsel. So we don't have counsel appointed. And I would say that that's a major problem in procedural default issues because certainly, pro se, it gets so complicated. Habeas law is getting more and more complicated every day. It's just an absolute quagmire. So to have someone sitting in a prison with inadequate library facilities attempting to put together a petition and determine if they're procedurally defaulted and determine their time limits and things of that nature is very convoluted. So it would be nice if somehow we could come to a place where we could have counsel appointed earlier because I think less people would run into these problems. Other than that, I will reserve the rest of my time. Thank you. May it please the Court. My name is Paul Weiser. I'm an assistant attorney general on behalf of Appellee Miller Stout in this matter. Mr. Sims's two claims, the insufficiency of the evidence claim and the ineffective assistance of trial counsel claim, are both procedurally barred in State court due to Mr. Sims's default. And the question in this case is, has he shown cause and prejudice sufficient to excuse that procedural default? And we would ask that the Court affirm Judge Shea's decision and deny habeas corpus relief. I'm not here to complicate the law of habeas corpus any more than it is. But clearly the claims that ---- Who should have that burden? Of complicating the law, Your Honor? I suggest we toss it back to Congress. Clearly, Mr. Sims's claims are barred under the Washington In Re Tater Bar. And there's nothing oppressive or arbitrary or violative of due process about a State having a bar like that. In fact ---- What do we do about the Russell case, though? The Russell case, Your Honor, is distinguishable on a couple of different bases. And we pointed this out to the district court, and Judge Shea agreed that Russell v. Rolfs that would be applicable here, that would call into question the adequacy of the In Re Tater Bar, was stated in dicta only, in the footnote 3 of that opinion. Because the Court had already decided, this Court had already decided in Mr. Russell's case, that the Washington Supreme Court had not clearly and expressly applied procedural bar in Mr. Russell's case. Of course, you realize that dicta is always in the eye of the beholder. And, you know, the question, if we were to say that Russell is dicta, you know, our colleagues would say, aren't you really trying to overrule Russell? What would be your response to that? That would be the reason, Your Honor, why I said there were two bases for distinguishing the case. The other basis being that the Russell v. Rolfs conclusion regarding the adequacy of the bar has been overcome by subsequent cases, cases that were decided after 1990, the year that Russell v. Rolfs. In the Washington Supreme Court? Or has there been any Ninth Circuit case that applied this Vanderbilt case? I'm not aware of any, Your Honor. I don't believe there are any, at least not any published opinions. And I don't recall over the years having that case cited in any unpublished opinions. But in Ray Vanderbilt's case. Why should State procedural rules, with no, adopted without any fundamental concept of justice, but merely we want to run our courts a little bit more efficiently, overrule the Great Writ? Well, Your Honor, that question was raised in Sanders v. United States back in 1963 by the United States Supreme Court. I understand that there are some procedural rules that are so fundamental in the operation of a system. But this procedural rule in this case seems to be really silly. Your Honor, I would beg to differ with the Court because it is based upon Sanders v. United States. The In Re Tater Bar that the Washington Supreme Court adopted and has subsequently applied in a number of cases was taken almost directly from Sanders v. United States, decided by the United States Supreme Court in 1963. So it parallels exactly the same bar on successive petitions that the United States Supreme Court announced more than 40 years ago. Well, we've got two panels on this Court who thinks maybe you're wrong. That this so-called procedural rule of Theda Washington should not overrule the Great Writ? Your Honor, the most recent time that the In Re Tater Bar was called in question, to my knowledge, is Russell v. Rawls' case. And as I've explained, not only in this case, but in all of the other cases that I've seen, the issue was even before the Court, because, in fact, the State had conceded in the Pirtle v. Morgan case that the Washington Supreme Court had erroneously applied the procedural bar. In other words, it was not even being litigated in Federal court, so that I hesitate to call it a gratuitous analysis of the In Re Tater Bar, but the issue was not even before the Court in that case, in the Pirtle case. Did you argue that case as well, Pirtle? Yes, Your Honor. I was involved in that case. It's our position that Mr. Sims has not shown adequate cause and prejudice for his default. Substantial compliance or attempts to comply are not sufficient to excuse his procedural default. He made no effort to seek review in the Washington Supreme Court after the Washington Court of Appeals dismissed his consolidated first personal restraint petition and the direct appeal in 2001. And when he did seek review on his second personal restraint petition, he made no effort to explain why it is that his case falls within the ends of justice exception. A lack of understanding of the rules or his pro se status alone is not enough to satisfy the cause problem. And the allegation that counsel was ineffective on appeal is also not sufficient to demonstrate cause for the procedural default, because Mr. Sims was not entitled to counsel beyond the decision of the Washington Court of Appeals, in other words, on discretionary review to the Washington Supreme Court, nor was he entitled to counsel on his personal restraint petition. So ineffective assistance of counsel is not available to Mr. Sims. If the court has no further questions, we would ask that the court affirm the decision of the district court and deny habeas relief in all respects. Ms. Johns. I have one more question. Ms. Johns. I just want to sort out the situation with the Ninth Circuit panels. I understand the intervening Washington Supreme Court case that says you don't need to have it from the same court in terms of the final decision. But in going back to Pertle, and what it says is Washington's relitigation rule does not serve as a bar to habeas review. And then they turn to the merits. So I'm reading that as saying, as seeing that the Ninth Circuit determined that Washington's relitigation rule was not a procedural bar. Do you read it differently? I – it certainly is capable of being read that way, susceptible of that interpretation. I'm just reading the sentence because I heard you to say that they didn't need to make this decision so that Pertle – we shouldn't – we can kind of sidestep Pertle. But then I'm going back to Pertle, and it says we conclude the claim is not procedurally barred, and then they turn to the merits. So I'm wondering, that's a little bit different than the whole question about this volute decision out of the Supreme Court. Your Honor, if the State had believed that the procedural default issue was a live one in the Pertle case, we would have cited the In re. Vandervloot decision as well as the In re. Bailey decision and demonstrated that In re. – or, excuse me, Russell v. Ross is no longer viable. We didn't have that opportunity because we didn't take that opportunity because we didn't feel that procedural default even applied in Mr. Pertle's case. The alleged procedural default in Mr. Pertle's case was on direct appeal, he challenged the jury instructions that were given in his case. Later, when he filed his personal restraint petition, he challenged counsel's actions in not getting better jury instructions in his case. And the court, the Washington Supreme Court, and we believe in error, decided that the In re. Tater Bar applied to that claim. We believe that that was a proper application of the In re. Tater Bar, and that's why we did not pursue that point at all in federal court. If the defendant or the petitioner had not filed a personal restraint petition, if he had not in the state court, would the result be different today? Your Honor, if he had not filed a personal restraint petition in the year 2001, yet had in 2002, in other words, if the second personal restraint petition were actually the first personal restraint petition, one of the claims would not be barred, and that would be one of them, the ineffective assistance of counsel claim, because that was raised in Mr. Tater Bar. Okay. But what about the other claim? The other claim was raised in counsel's Anders brief. That was an issue that was identified and presented to the court and analyzed by the Washington Court of Appeals, the insufficiency of the evidence claim. That was raised on direct appeal. The ineffective assistance of counsel claim was raised in the personal restraint petition. So, yes, Mr. Sims had not filed that first personal restraint petition at all. There would not have been a prior litigation for him to be barred by. There would be no procedural rule barring him in our court. There wouldn't be, if that had been, in fact, the case, if he had not filed that first personal restraint petition. That is correct. So the procedural rule, in your view, that's preventing him from bringing the case here is the relitigation rule? That's correct, Your Honor, because he did have those claims heard and determined by the Washington Court of Appeals in his first personal restraint petition, which was consolidated with the direct appeal. I'm still puzzled by your responses with regard to Pirtle. I'm looking at the Washington Supreme Court refused to address this claim in Pirtle's personal restraint petition because he had already challenged the jury instructions in numerous ways. And the personal restraint petition is not a forum for relitigation of issues already considered on direct appeal. That sounds like that was a big issue in that case. Yes, Your Honor, except the issue that Mr. Pirtle raised in his personal restraint petition was not the same, at least in our view, was not the same as what was raised on direct appeal. He didn't challenge the jury instructions, per se. He challenged counsel, the effectiveness of counsel's representation with respect to the jury instructions that were given at trial. The Washington Supreme Court looked at that, and we believe erroneously, nevertheless, the court concluded that that was procedurally barred. Just to get this straight, so you're saying because he's challenging ineffective assistance of counsel rather than the substantive ruling. That's correct, Your Honor. That typically is done on a post-direct review. In fact, many courts demand that it be done. That's correct. Depending on the circumstances. Correct. And I see that. I'll tell you, this stuff is, we take up more time. That's why I said bounce it to Congress, because we could decide the merits of his case a lot easier than we could decide all these knots they've tied us in. I read that part of the Pirtle decision, but then as, you know, Judge Hugg is probably getting to, it says the relitigation rule does not serve as a bar to habeas review. That's what it says in the Ninth Circuit decision, so I'm not sure how this panel could make a different decision. Your Honor, first of all, it's again our position that the issue wasn't even before the Pirtle, because neither of the parties had presented it as an issue. But also when the ---- All right. Well, the court raised it sua sponte. The district court ---- I'm sorry, Your Honor. The district court did raise that issue sua sponte. Okay. So then it's before the court. It was before the court. Maybe you didn't want it to be before the court, but it got there somehow. It was reviewing the judgment of the lower court, but that issue was not being pursued. We did not argue that Mr. Pirtle was procedurally barred from obtaining review. I know, but see, this, the fact that you didn't argue it doesn't mean that the court didn't decide it. So that doesn't, it doesn't really advance our conundrum here. Right. I think we might need to determine what exactly did the Pirtle court hold. Is it a holding? Are they saying that never, ever, ever can In re Tater bar someone, or are they saying In re Tater doesn't apply in this case? And I think it's capable of being read in either way. And I think the better reading is that it wasn't an issue for the panel that decided Mr. Pirtle's case. Thank you. Thank you, Your Honor. I just wanted to follow up on one thing, and that was that you asked if he had not filed a personal restraint petition, would we have been in a different circumstance? If, in fact, he had just called it something else, we'd be in a different circumstance. If he had called it a supplemental brief instead of a personal restraint petition, we'd be somewhere else. And that's what the problem is when you allow procedural rules from different states to override or bar people from utilizing the great writ. The reason that the writ is here is so that people can have their issues reviewed. So I think that that is a good question, because, yes, I think it would be different. If he had just called it something else, if he hadn't filed it at all and then done a motion for discretionary review of his direct appeal, if any one of those other things had happened other than him filing this PRP and then trying to undo it, then we'd be in a different circumstance than we are now. And I think it is difficult to allow that a relitigation rule from a state court should bar somebody from having Federal relief, and I think that that's not the Ninth Circuit's position at this point with Russell v. Ross. So with that said, I would ask the Court to consider allowing Mr. Sims's petition to be remanded to the district court for consideration on the merits. Thank you. Thank you. The case of Sims v. Miller-Stout is submitted. Thank both counsels.
judges: Hug, Ferguson, McKeown